FARMERS BANK & TRUST COMPANY, A CORPORATION, AND WILLIAM J. SERPAS, *Appellants,* v. THE RAVLIN CORPORATION, A CORPORATION, *Appellee.*

Division B.

Opinion Filed July 13, 1927.

Petition for Rehearing Denied October 13, 1927.

*M. D. Carmichael* and *Ernest Metcalf*, Attorneys for Appellants;

*Shutts & Bowen*, Attorneys, for Appellee.

BUFORD, J.—This was a suit brought to enforce specific performance of a contract. The decree was entered upon bill and answer and testimony taken before the Chancellor. Final decree was in favor of the defendant. From this decree appeal was taken with twelve (12) asssignments of error, as follows:

"1. That the said Circuit Court erred in entering its final decree in said cause.

2. That the said Circuit Court erred in making and entering its final decree in said cause in finding the equities to be with the complainant and not with the defendants.

3. That the said Circuit Court erred in making and entering its final decree in said cause in finding, ordering and decreeing that the written agreement for the sale of High Pines be cancelled and in not finding for the defendants and ordering, adjudging and decreeing that said written agreement for the · sale of said High Pines be specially enforced in favor of the defendants.

4. That the said Circuit Court erred in making and entering said final decree in finding and decreeing that the contract be cancelled and enforced as prayed for by defendants in their counterclaim.

5. That the said Circuit Court erred in making and entering said final decree in determining and decreeing that the complainant was entitled to the relief prayed for

in its amended bill of complaint, and not that the defendants were entitled to the relief prayed for in their counter claim.

6. That said Circuit Court erred in making and entering its final decree dated April 22, 1926, in determining and decreeing that said agreement had been lawfully cancelled and annulled by the complainant in accordance with the provisions of the agreement.

7. That the said Circuit Court erred in making and entering said final decree in determining and decreeing that the Clerk of the Circuit Court be directed to cancel said written agreement by writing in the margin of the record of said contract in red ink the words, 'Cancel by decree of the court bearing date April 22, 1926.'

8. That the said Circuit Court erred in making and entering said final decree in determining and decreeing that the assignments of said contract by defendant, William J. Serpas, to Ralph W. Woodbury, and by Ralph W. Woodbury to Farmers Bank & Trust Company, are clouds upon the title of complainant and that the said assignments be cancelled by the Clerk of the Circuit Court by writing in red ink in the margin of the record of said assignments the words 'Cancel by decree of court bearing date April 22, 1926.'

9. That said Circuit Court erred in making and entering said final decree dated April 22, 1926, in finding and decreeing that the affirmative relief prayed for in the answer of the defendants be denied.

10. That said Circuit Court erred in making an order in said cause denying defendants petition for rehearing filed September 7th, 1926.

11. That said Circuit Court erred in making and entering said final decree in said cause without permitting counsel to argue same at a final hearing.

12. That said Circuit Court erred in making and entering said final decree without a final hearing after it had been agreed by counsel and the court that a final hearing would be held.''

The findings of the Chancellor are set forth in the form of a letter addressed to Messrs. Shutts & Bowen, Miami, Florida, in the following language:

''Upon the closing of the testimony last week it was suggested by counsel that briefs would be prepared and submitted at a later date, and your Mr. Bowen stated that he desired to argue the law and facts orally before the Court.

I have carefully read the pleadings with the exhibits, have heard the witnesses testify, and inspected the several exhibits filed in evidence at the hearing, and feel that I am now in a better position to give a decision than I will be later on when the case is argued, and the facts, to a certain extent, out of my mind. I am expecting to leave Miami Saturday, the 24th, on my vacation, to be gone not less than one month, and possibly as long as two months. I do not underestimate the value of services rendered by counsel to the Court in arriving at a just decision in any contested case, but in the case at bar, I feel that I am as well prepared to give judgment now as I will be at any time in the future.

The whole matter depends upon what interpretation shall be placed by the Court upon the contract of August 7, 1924, between the Ravlin Corporation and William J. Serpas. This agreement constitutes the entire contract between the parties. There is testimony concerning sales made by Serpas under former agreements, but it must be conceded that all prior agreements were merged into the main contract of August 7th. This agreement is unilateral and creates an option or privilege in Serpas

to purchase a certain number of lots in High Pines during certain years. It becomes bilateral only after the requisite number of lots has been purchased by Serpas during the year, and payment of not less than 10% of the purchase price of the lots according to the official price list of the company.

There is a provision in the contract that if Serpas fails to purchase 150 lots in High Pines on or by May 1, 1925, that the contract may be revoked by the Ravlin Corporation, upon notice to that effect given Serpas prior to May 15th. No question of agency in involved in this case. The questions involved are:

1. Did Serpas purchase 150 lots in High Pines between August 7, 1924, and May 1, 1925?

2. If such purchases were not made, did Serpas offer to buy the lots and tender the money to the Ravlin Corporation?

3. If such lots were not purchased, or tender made, did the Ravlins exercise their option to cancel the contract by giving a notice to that effect prior to May 15, 1925?

Upon these issues I think the testimony is conclusive:

1. That Serpas did not purchase 150 lots prior to May 1, 1925.

2. That testimony as to offers by Serpas and his associates to purchase the requisite number of lots, and tenders of the purchase money by Serpas and his associates to Shutts and Bowen, solicitors for the Ravlin Corporation, and to the officers of the Ravlin Corporation, is in hopeless conflict.

Testimony as to tenders made to the law firm of Shutts and Bowen, in my judgment, is irrelevant. Attorneys have power to bind the client as to matters in litigation, but as to matters not in litigation they have no such power, unless the same is specially given to them as in the case of

other agents. Hence, the case centers upon whether a tender was made to the Ravlin Corporation April 30, 1925, as testified to by Mr. Wodbury and his associates at the Ravlin home. Upon this point the witnesses are resolved into two groups, both of whom are interested in the result of the litigation, one group testifying to one set of facts, the other group disputing practically everything said by the first group. One disinterested witness, however, a Mr. Thompson, corroborates the Ravlins, and his testimony, in my judgment, turns the scale in their favor. The one man, Levinson, who was in position to have stated just what happened, for some reason unknown to the Court, was not produced. Hence, I conclude the weight of the testimony is against the offer to purchase on the part of Serpas, and the tender of 10% of the purchase money as required by the contract.

3. There seems to be no doubt that the notice of cancellation was given and received by Serpas prior to May 15th. Inasmuch as the contract referred to does not create an agency or constitute a power coupled with an interest, in my judgment the Ravlin Corporation had the right to revoke and cancel it upon breach of condition as above set forth.

There is another clause in the contract which provides that even though the same may be cancelled by the Ravlin Corporation, that the party of the second part will be allowed three months additional in which to make payments upon lots sold by him to other parties. I do not think that it is alleged in the pleadings or appears by the evidence that Serpas had sold lots for which he desired deeds under this provision of the contract. If such be the case, he would be entitled to a specific performance in a new proceeding.

There is abundant testimony to show that tenders were

made by Carmichael in the early part of August, 1925, to the Ravlin Corporation. This testimony, however, in view of my construction of the contract referred to, is wholly irrelevant, because if the contract was lawfully cancelled in May, it could not be revived by any subsequent act of Mr. Serpas, his associates or assigns.

Likewise, I don't think it will be contended that if the contract. was legally cancelled or revoked by the Ravlins in May, 1925, that an assignment by Serpas to Woodbury and by Woodbury to Farmers Bank & Trust Company at any time subsequent to the date of cancellation could possibly vest any right in the assignee as an innocent purchaser.

I shall, therefore, enter a decree in accordance with the above findings for the purpose of settling this case so far as the Court is concerned, but subject to motion by either party filed within twenty days for alteration or amendment.

Yours truly,<br>H. F. ATKINSON,<br>Judge.''

Copy to Mr.
Ernest Metcalf.

Upon these findings a final decree was entered in the following language:

"This cause came on to be finally heard before me upon the pleadings and testimony of witnesses taken orally before the Court, and documentary evidence submitted by the parties at the hearing.

Upon consideration thereof, after agreement of counsel, and being advised in the premises, the Court finds that the equities of said cause are in the complainant corporation, and that it is entitled to the relief prayed for in its bill of complaint as amended.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED, that the agreement in writing between the Ravlin Corporation, complainant, of the first part, and William J. Serpas, of the second part, giving and granting to the said party of the second part, his heirs and assigns, the privilege of purchasing the several lots therein describing, being lots in the subdivision known as High Pines, in Dade County, Florida, which said agreement appears to have been executed on the 7th day of August, A. D. 1924, has been lawfully cancelled and annulled by notice in writing to the party of the second part in accordance with the provisions of said agreement, and that the same is null and void, and the record of said contract creates a cloud upon the title of complainant in and to the lands therein described, which should be, and is hereby expunged, and the Clerk of Circuit Court is hereby directed to cancel the same by writing in red ink on the margin of the record of said contract the words, 'Cancelled by decree of court bearing date April 22, A. D. 1926.'

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the assignment of said contract by the defendant, Serpas, to Ralph Woodbury, and by Ralph Woodbury to Farmers Bank & Trust Company, is likewise a cloud upon the title of complainant, which should be and is hereby expunged, and the Clerk of Circuit Court is hereby directed to write on the margin of the record of said assignment in red ink the words, 'Cancelled by decree of court bearing date April 22, A. D. 1926.'

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the affirmative relief prayed for in the answer of the defendants be and the same is hereby denied.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the defendants, William J. Serpas and Farmers Bank & Trust Company, a corporation, pay the

costs of this proceeding as taxed by the Clerk of Circuit Court, including the fees of the court reporter in taking and transcribing notes of the testimony of the witnesses examined orally before the court at the final hearing of this cause, for all of which complainant shall have judgment as at law.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 22nd day of April, A. D. 1926.''

The contract which formed the basis of this suit contained two provisions which were inconsistent one with the other. One provision was as follows:

''That the Ravlin Corporation, existing under the laws of the State of Florida, of the County of Dade, State of Florida, party of the first part, and William J. Serpas, of Miami, Dade County, Florida, party of the second part, for and in consideration of the sum of Ten ($10.00) Dollars and other valuable considerations to it in hand paid by William J. Serpas, Miami, Dade County, Florida, receipt of which is hereby acknowledged, does hereby give the said William J. Serpas, his heirs and assigns, the privilege of purchasing on or before the period of one, two and three years from date, the following described real estate, situated in the County of Dade and State of Florida, to-wit: * * * * * * *

It is further agreed by party of the first part that if William J. Serpas has actually purchased 150 of these lots on the terms previously described within twelve months from date that this agreement is to be extended for an additional twelve months, and if during the second twelve-month period William J. Serpas purchases 250 more of these lots on the terms previously described, then this agreement is to be extended one year more.

The party of the second part agrees that all purchases made after twelve months from date shall be at an in-

creased price of 20% on the official price list as above described· and hereto attached.''

The other provision is as follows:

''If the party of the second part fails to purchase at least 150 of these lots prior to May 1st, 1925, then the party of the first part may at his option terminate this agreement by written notice to the party of the second part on or before the 15th day of May, 1925.''

After the appearance of this provision in the contract, the following appears:

''Party of the first part agrees that should Wm. J. Serpas fail to purchase number of lots previously stated, and according to the terms and conditions of this agreement, and the Ravlin Corporation thereby cancels this agreement, to enter into a new contract with William J. Serpas, giving him ninety days to purchase any· or all lots on which he may have prospective buyers, on the terms hereinbefore mentioned, and at the prices herein mentioned.

The party of the first part agrees that providing William J. Serpas has purchased 150 of these lots according to the terms of this agreement that this agreement will then include all remaining unsold lots in Block .Nos. 28, 29, 30, 31, 32, 33, 34, 35, 36, the purchase price of which shall be as of official price list designated as official price list in Section ·D.''

It ·became the duty of the Chancellor to construe the contract and in doing so his finding was to the effect that in the event 150 lots had not been purchased by Serpas prior to May 1, 1925, the party of the first part had the right to exercise its option to terminate the contract by ·written notice to the party of the second part before the 15th day of May;· and the Chancellor further ·found that such option· was exercised and the contract terminated.

This latter finding was one of fact based upon the evidence produced before the Chancellor. It will be observed that some of the assignments of error are addressed to the action of the Chancellor in arriving at his findings and entering the decree without having had submitted to him the argument of counsel on the merits of the case. We think that as a matter of legal right there is no merit in the contention raised by these assignments of error. When the pleadings and the evidence in a Chancery case have been submitted to the Chancellor the case is then before him for disposition and he may exercise his own pleasure and discretion as to whether or not he will hear argument from counsel pro and con on the merits of the case; and if the Chancellor feels that no good purpose can be served and no different result be accomplished by indulging counsel in their desire to be heard in the matter, he is within his legal rights to so hold and enter such decree as to him appear justified by the pleadings and evidence.

The rule is well established that unless it is made to appear that the Chancellor has clearly erred in his conclusion of facts and in his decree, such decree should not be reversed. Wilson v. Duncan, decided at this term of Court, 112 Sou. 48. Fuller v. Fuller, 23 Fla. 236, 2 So. 426; Waterman v. Higgins, 28 Fla. 660, 10 So. 97; Perez v. Bank of Key West, 36 Fla. 467, 18 So. 590; Dean v. Dean, 36 Fla. 492, 18 So. 592; City of Jacksonville v. Huff, 39 Fla. 8, 21 So. 774; Hopkins v. O'Brien, 57 Fla. 444, 49 So. 936; Sarasota Ice, Fish & Power Co. v. Lyle & Co., 58 Fla. 517, 50 So. 993; Farrell v. Forest Inv. Co., 73 Fla. 191, 74 So. 216, 1 A. L. R. 25; Simpson v. First National Bank of Pensacola, 74 Fla. 539, 77 So. 204; Lewter v. Price, 25 Fla. 574, 6 So. 439; Davidson v. Collier, 75 Fla. 783, 78 So. 983; Cobb v. Cobb, 82 Fla. 287, text 290, 89 So. 869; Viser v. Williard, 60 Fla. 395, 53 So. 501.

We have been unable to find any reversible error disclosed by the record, and therefore, the decree is affirmed.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion.